UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 99-10098-RGS |
| | ) | |
| DAVID A. TURNER | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT DAVID A. TURNER'S MOTION TO AMEND HIS PETITION FILED PURSUANT TO 28 U.S.C. § 2255 AND REPLY TO GOVERNMENT'S OPPOSITION TO SAID PETITION**

The United States of America, by Acting United States Attorney Michael K. Loucks and Assistant United States Attorney James Lang, hereby submits this response to the defendant David A. Turner's Motion to Amend his Petition Filed Pursuant to 28 U.S.C. § 2255 and Reply to Government's Opposition to Said Petition ("Def. Mot.").

**I.  INTRODUCTION**

The defendant seeks to amend his previously filed § 2255 motion in order, essentially, to add a new claim that the government withheld material exculpatory evidence from him. [Def. Mot. 1]. The new claim is predicated in its entirety upon an article that appeared on March 15, 2009 in the Boston Globe in which the reporter recounted a purported conversation that took place on a "winter afternoon in 1998" between a special agent of the Federal Bureau of Investigation ("FBI") and the Director of the Isabella Stewart Gardner Museum ("the Gardner Museum"). In pertinent part, the article states as follows:

> As they walked the bare grounds that surround the museum that February day, Special Agent W. Thomas Cassano told [Anne] Hawley, according to notes made after the conversation: "It looks like we know who did it. One is in jail, one is dead, and one is on the street."
>
> The FBI, Cassano said, had picked up the Gardner trail during an undercover operation targeting Carmello Merlino. Word was that Merlino, along with three South Shore men, had been responsible for the historic heist.
>
> And so the agency went all out. One of the three Merlino confederates was dead, but they pressed the other two hard. Agents put an undercover informant in the jail cell of one, Peter Boylan of Weymouth, and later offered to drop federal charges against the other, David Turner of Braintree, if he would tell what he knew.

[*Untangling the Gardner Art Heist*, Stephen Kurkjian, Boston Sunday Globe (Metro Section), March 15, 2009 (excerpted in Def. Mot. 1-2)].

The defendant asserts that this information is "directly relevant" to his trial defense, i.e. "[t]hat the FBI believed he could facilitate the return of the paintings and therefore targeted him for prosecution." [Def. Mot. 2]. The defendant further posits that there must be one or more FBI reports documenting the conversation between FBI Special Agent Cassano and Ms. Hawley, as recounted in the Globe article, and that the failure of the government to disclose it or them constitutes a *Brady* violation. [Def. Mot. 3 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963))].

2

**II.  ARGUMENT**

The government assumes *arguendo* that the defendant's new claim is timely, i.e., that he only become aware of the information on which it is based upon publication of the Globe article on March 15, 2009, and that his failure to learn of the information sooner was not a consequence of a lack of diligence on his part.  That being so, the government further assumes that under Fed. R. Civ. P. 15 the defendant is entitled to amend his previously filed § 2255 motion by adding this claim.  *See e.g., Ching v. United* States, 298 F.3d 174, 177-178 (2d Cir. 2002) (expressing the view that, because AEDEPA's gatekeeping provisions relating to second and subsequent § 2255 petitions are so stringent, the more lenient standard of Rule 15 should apply to motions to amend that are brought while an initial § 2255 petition is still pending).  But even if the defendant is permitted to amend his motion, the new claim is no more meritorious than the two he presented in his original § 2255 submission and should likewise be denied.

Simply put, the information contained in the Globe article that the defendant characterizes as materially exculpatory, even if it is assumed to be accurate, is just a more tepid and amorphous variation of the type of information that was contained in the so-called Chicofsky FBI reports upon which his

unsuccessful post-conviction motion for a new trial was based.[1] In its order denying the new trial motion, this Court made several observations that are equally applicable to the defendant's new exculpatory evidence claim:

> [N]othing that Chicofsky reported lent itself to the view that Turner had any actual knowledge about the location of the paintings, or that Turner was involved with the paintings in November of 1998, when Merlino began to seriously plan the Loomis Fargo robbery. . . . Second, that the FBI considered Turner a possible

---

[1] It is puzzling that the defendant has submitted a new § 2255 claim based on unsubstantiated information from a newspaper article, rather than seeking first to establish the legitimacy of that information. He has not sought discovery of any FBI report or reports that may exist, perhaps because, notwithstanding his assertion to the contrary, there is no reason to suppose that Special Agent Cassano would have documented a mere conversation with, rather than an interview of, Ms. Hawley. The government notes in that regard that, in response to post-conviction discovery requests, undersigned counsel caused to be conducted by the FBI a comprehensive search of its files for any and all reports relating to the Gardner investigation in which the defendant's name was mentioned, and it produced all such reports to the defendant (or, in two instances, disclosed the substance of the reports). In response to a subsequent discovery request, undersigned counsel personally undertook to review the FBI's and the United States Attorney's Office's entire Gardner investigation files, and, after so doing, it essentially disclosed every document of any kind it found in which the defendant's name appeared and which had not already been previously disclosed. These documents included various handwritten notes of unknown origin, a typed "to do" list of likewise uncertain providence, draft paperwork seeking authorization for the installation of a tracking device on the defendant's car, and the like. *See* Government's Response to Defendant Turner's Post-Verdict Motion for Production of Informant Information; Government's Response to Defendant David Turner's Motion for Discovery; and Government's Report Regarding Production of Discovery and Request for Protective Order. As a consequence, there is no valid reason to suppose that additional FBI reports exist relating to the Gardner investigation and referencing the defendant.

>     suspect in the Gardner robbery was no secret to the
>     jury and was testified to by both [FBI Special Agent
>     Neil] Cronin and [FBI Special Agent David] Nadolski.

[Memorandum and Order on Defendants' Motion for a New Trial 15-16 (footnotes omitted)].  Equally apposite is what the Court said about the defendant's claim that the Chicofsky reports went beyond other information the jury heard and might have convinced the jury that the FBI was convinced that he knew where the paintings were and therefore had a strong motive to instruct its informant in the Loomis Fargo investigation, Anthony Romano, to pressure Merlino to entice him into the Loomis Fargo conspiracy:

>     There are two problems with the argument.  The first,
>     of course, is there is no evidence that Romano ever
>     pressured Merlino to do anything or that Merlino ever
>     pressured or improperly (in the legal sense) induced
>     Turner into participating in the robbery.  The second
>     problem lies in the fact that no amount of motive on
>     the FBI's part would overcome the evidence that Turner
>     was a willing and enthusiastic participant in the
>     conspiracy.  As the court concluded well over a year
>     ago when the issue involving the undisclosed Chicofsky
>     302 reports was first raised by Turner:
>
>>     [t]he Loomis Fargo robbery had been conceived
>>     by Merlino long before he had been approached
>>     by Romano with the suggestion of an "insider"
>>     contact at the Loomis Fargo facility and
>>     visions of a multi-million dollar heist.
>>     Indeed, according to Merlino, Turner had
>>     accompanied him to the facility on a
>>     surveillance mission long before Romano
>>     appeared on the scene.  Nor was there any
>>     evidence (other than Turner's sloth in
>>     returning telephone calls) to suggest a lack
>>     of willingness on his part to join the
>>     robbery. . . . There is no evidence that
>>     Merlino threatened Turner or offered any
>>     inducement other than a proportional share of
>>     the proceeds of what Merlino had been led to
>>     believe would be a particularly lucrative

>           robbery. Nor is there any evidence that
>           Romano or his FBI handlers were privy to any
>           undue pressure brought by Merlino on Turner
>           (indeed the evidence is that there was none).

*Id*. at 17-18 (quoting Memorandum and Order of September 4, 2003 4-5).

Nothing that Special Agent Cassano allegedly told Ms. Hawley in February 1998, nor whatever those statements might have suggested as to the mindset of the FBI at the time regarding either the defendant's involvement in the Gardner robbery or his ability to orchestrate the return of the paintings, can colorably be characterized as materially exculpatory.  At most, they might have provided some minimal additional fodder for arguing to the jury that the FBI had a motive to attempt to ensnare the defendant in the Loomis Fargo sting.  But, as this Court aptly recognized with respect to the far more significant Chicofsky reports, no amount of motive of that sort could bridge the gaps in the defendant's entrapment defense, either with respect to the improper inducement or the lack of predisposition prongs.  Thus, the new "evidence" the defendant proffers in his motion to amend could not conceivably have altered the outcome of the trial.  Accordingly, his newly discovered evidence claim, like the two claims he advanced in his original § 2255 motion, falls well short of establishing entitlement to habeas relief.

## CONCLUSION

For the foregoing reasons, in conjunction with those set

6

forth in the government's initial memorandum in opposition to the defendant's § 2255 motion, this Court should deny said motion.

            Respectfully submitted,

            MICHAEL K. LOUCKS
            Acting United States Attorney


         By: /s/ James Lang
            JAMES F. LANG
            Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

 I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

            /s/ James Lang
            JAMES LANG
            Assistant U.S. Attorney