UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 99-10098-RGS
CIVIL ACTION NO. 09-10303-RGS

DAVID A. TURNER

v.

UNITED STATES OF AMERICA

<u>MEMORANDUM AND ORDER ON
PETITIONER'S MOTION TO VACATE,
SET ASIDE, OR CORRECT SENTENCE</u>

May 20, 2009

STEARNS, D.J.

On March 2, 2009, David A. Turner, through counsel, brought this petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Turner's principal contention is that a Hobbs Act conspiracy, as defined in 18 U.S.C. § 1951(a), does not qualify as a crime of violence subject to the enhanced penalties prescribed by 18 U.S.C. § 924(c). In the alternative, Turner requests that the court hold the petition in abeyance while he pursues a Freedom of Information Act (FOIA) request related to the unsuccessful entrapment defense he mounted at trial.[1] For the reasons stated, the petition will be <u>DENIED</u>, as will the request for a stay.[2]

---

[1] Turner additionally argues that the issue whether a Hobbs Act conspiracy qualifies as a crime of violence is a factual determination that should have been submitted to the jury.

[2] On April 8, 2009, Turner filed a motion for leave to amend his petition and reply to the government's opposition. In the motion, Turner argues that an article in the Boston Globe newspaper, dated March 15, 2009, contains new evidence relevant to his pretrial motion to dismiss, and his entrapment defense. The court will <u>ALLOW</u> the motion to amend insofar as the court will consider the arguments raised in the motion in ruling on

BACKGROUND

On October 24, 2001, following a four-week jury trial, Turner was convicted on six charges: (1) conspiracy to affect commerce by robbery (Hobbs Act conspiracy); and (2) attempting to commit a robbery affecting commerce, both in violation of 18 U.S.C. § 1951; (3) carrying a hand grenade during and in relation to a crime of violence (the Hobbs Act conspiracy); and (4) carrying other firearms during and in relation to a crime of violence, both in violation of 18 U.S.C. § 924(c); (5) being a previously convicted felon in possession of a hand grenade; and (6) being a previously convicted felon in possession of other firearms, both in violation of 18 U.S.C. § 922(g)(1). Turner's convictions stemmed from his involvement with three co-defendants in a conspiracy to rob a Loomis Fargo armored car facility in Easton, Massachusetts.[3]

Prior to trial, Turner moved to dismiss Counts III and IV, arguing (as he does now) that a Hobbs Act conspiracy does not constitute a "crime of violence" under 18 U.S.C. § 924(c). The court denied the motion, as well as a post-trial motion for a judgment of acquittal based on the same argument. On appeal, the First Circuit also rejected Turner's Hobbs Act contention. See United States v. Turner, 501 F.3d 59, 68 (1st Cir. 2007). The United States Supreme Court thereafter denied Turner's petition for certiorari. Turner v. United States, 128 S.Ct. 1473 (U.S. Mar. 3, 2008).

---

Turner's petition.

[3]At trial, Turner presented an entrapment defense, arguing that two Federal Bureau of Investigation (FBI) agents targeted and entrapped him because they believed that if confronted with serious criminal charges, he would assist in the recovery of priceless paintings stolen during a notorious (and unsolved) robbery of the Isabella Stewart Gardner Museum in Boston.

DISCUSSION

Turner's contention that a Hobbs Act conspiracy does not qualify as a crime of violence under section 924(c) can be disposed of quickly. While Turner argues that there is a circuit split on this issue, he concedes that the First Circuit has joined the majority in rejecting his argument. In its decision on Turner's case, the First Circuit relied on the reasoning of the Second Circuit:

> [a] conspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals. Such a meeting of the minds enhances the likelihood that the planned crime will be carried out. Thus, when a conspiracy exists to commit a crime of violence, . . . the conspiracy itself poses a substantial risk of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

Turner, 501 F.3d at 67 (quoting United States v. Elder, 88 F.3d 127, 129 (2d Cir. 1996)).

Turner has litigated this same issue (twice) before this court, and before the First Circuit. It is settled habeas law that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton v. United States, 26 F.3d 233, 240 (1st Cir. 1994) (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir.1967)). While Turner would be permitted to relitigate the issue had there been a subsequent change in the law, see Davis v. United States, 417 U.S. 333, 342 (1974), none has occurred. Turner's suggestion that the Supreme Court's decision in James v. United States, 550 U.S. 192 (2007), "left open" the door for reconsideration of the issue has no merit.[4] In addition to the fact that the cases discussed in James involved burglary and not

---

[4] In James, the Court held that attempted burglary, as defined by Florida law, is a "violent felony" within the meaning of the Armed Career Criminal Act (ACCA). James, 550 U.S. at 209. Turner relies on the Court's discussion of cases originating in states which do not require proof of an overt act as an element of an attempted crime. Cf.

3

any crime resembling the Hobbs Act, it is telling that the Court even in that context declined to consider the contrary holdings. In any event, the decision in James issued on April 18, 2007, and the First Circuit decided Turner's appeal four months later, on August 31, 2007, without any reference to James.

Turner's secondary argument that the issue whether a Hobbs Act conspiracy is a "crime of violence" should have been submitted to the jury is long defaulted. Turner did not present this claim on direct review, and has not even attempted to demonstrate "cause" and "prejudice" resulting from his omission. Murray v. Carrier, 477 U.S. 478, 485 (1986). Nor has Turner attempted to demonstrate "actual innocence," the only other available route for salvaging the default. Id. at 496. See also Sustache-Rivera v. United States, 221 F.3d 8, 17 (1st Cir. 2000).

Next, Turner directs the court to a Boston Globe article on the Gardner robbery suggesting that it points to new (exculpatory) evidence buttressing his claim of entrapment. The article states, in narrative part:

> [a]s they walked the bare grounds that surround the museum that February day, Special Agent W. Thomas Cassano told [Anne] Hawley [Director of the

---

Commonwealth v. Peaslee, 177 Mass. 267, 272 (1901) (Holmes, C.J.) ("But some preparations may amount to an attempt. It is a question of degree. If the preparation comes very near to the accomplishment of the act, the intent to complete it renders the crime so probable that the act will be a [crime], although there is still a locus poenitentiae, in the need of a further exertion of the will to complete the crime."). The Court noted that cases holding to the contrary "involved attempt laws that could be satisfied by preparatory conduct that does not pose the same risk of violent confrontation and physical harm posed by an attempt to enter a structure illegally. Given that Florida law, as interpreted by that State's highest court, requires an overt act directed toward the entry of a structure, we need not consider whether the more attenuated conduct encompassed by such laws presents a potential risk of serious injury under ACCA." James, 550 U.S. at 205-206.

4

> Gardner Museum], according to notes made after the conversation: "It looks like we know who did it. One is in jail, one is dead, and one is on the street."
>
> The FBI, Cassano said, had picked up the Gardner trail during an undercover operation targeting Carmello Merlino. Word was that Merlino, along with three South Shore men, had been responsible for the historic heist.
>
> And so the agency went all out. One of the three Merlino confederates was dead, but they pressed the other two hard. Agents put an undercover informant in the jail cell of one, Peter Boylan of Weymouth, and later offered to drop federal charges against the other, David Turner of Braintree, if he would tell what he knew.

Stephen Kurkjian, *Untangling the Gardner Art Heist*, BOSTON SUNDAY GLOBE, Metro Section, March 15, 2009, at B1-B2.

According to Turner, the article corroborates his claim at trial that the FBI specifically targeted him because of its belief that he knew where the paintings had been sequestered. Turner speculates that reports in FBI files confirm Agent Cassano's conversation with Hawley, and argues that they should have been produced prior to trial, pursuant to Brady v. Maryland, 373 U.S. 83, 87 (1963). Nothing in the article, however (even putting aside its hearsay character), constitutes breaking news. The FBI's interest in Turner as a possible key to solving the Gardner heist was public knowledge almost from the moment of Turner's arrest and was thoroughly ventilated at trial. As the court noted in denying Turner's motion for a new trial, "that the FBI considered Turner a possible suspect in the Gardner robbery was no secret to the jury and was testified to by both [FBI Special Agent Neil] Cronin and [FBI Special Agent David] Nadolski." Memorandum and Order, March 4, 2005, at 16. To the extent that the jury believed that the FBI's motive in "targeting" Turner stemmed from his presumed connection to the Gardner robbery, it

5

properly separated that motive from Turner's participation in the attempt to rob the Loomis facility and rejected his entrapment defense.

Finally, Turner requests that the court hold his petition in abeyance until he receives responses to FOIA requests submitted to the Bureau of Alcohol Tobacco, Firearms and Explosives, the FBI, the United States Customs Service, and the United States Attorney's Office. Turner states that the purpose of his requests is to determine whether these agencies possess information that they have not previously disclosed that might have been relevant to his entrapment defense. The court sees no justification for a stay. In the unlikely event Turner should turn up new and exculpatory evidence, he must comply with the procedural requirements for filing a second and successive section 2255 petition.

## CONCLUSION

For the foregoing reasons, Turner's petition to vacate, set aside, or correct his sentence is DENIED. The Clerk may now close the case.

SO ORDERED

/s/ Richard G. Stearns

_____

UNITED STATES DISTRICT JUDGE